IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

WEST GULF MARITIME ASSOCIATION, §
                                §
                Plaintiff,      §
                                §
v.                              §        CIVIL ACTION NO. H-09-2367
                                §
LAKE CHARLES STEVEDORES, LLC,   §
                                §
                Defendant.      §

## MEMORANDUM OPINION AND ORDER

Plaintiff, West Gulf Maritime Association (WGMA), brings this action against defendant, Lake Charles Stevedores, LLC, for breach of contract to recover labor fees due and owing for the provision of payroll services provided to the defendant from May of 2008 through -- at least -- May of 2009.  Pending before the court is Defendant's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction and, in the Alternative, Motion to Dismiss for Improper Venue and Motion to Transfer Venue (Docket Entry No. 4). For the reasons explained below, the pending motion will be denied.

## I.  Motion to Dismiss for Lack of Personal Jurisdiction

### A.  Standard of Review

When a foreign defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), "the plaintiff 'bears the burden of establishing the district court's jurisdiction over the defendant.'"  <u>Quick Technologies, Inc. v.</u>

Sage Group PLC, 313 F.3d 338, 343 (5th Cir. 2002), cert. denied, 124 S.Ct. 66 (2003) (quoting Mink v. AAAA Development LLC, 190 F.3d 333, 335 (5th Cir. 1999)). "When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.'" Id. "In making its determination, the district court may consider the contents of the record before the court at the time of the motion, including 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'" Id. at 344. The court must accept as true uncontroverted allegations in the plaintiff's complaint and must resolve factual conflicts in the plaintiff's favor, but need not credit conclusory allegations even if uncontroverted. See Panda Brandywine Corp. v. Potomac Electric Power Co., 253 F.3d 865, 869 (5th Cir. 2001). "Absent any dispute as to the relevant facts . . . whether personal jurisdiction may be exercised over a nonresident defendant is a question of law." Ruston Gas Turbines, Inc. v. Donaldson Co., Inc., 9 F.3d 415, 418 (5th Cir. 1993).

**B.   Analysis**

   1.   Applicable Law

Exercise of personal jurisdiction over a nonresident defendant comports with federal due process guarantees when the nonresident defendant has established minimum contacts with the forum state,

and the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, 66 S.Ct. 154, 158 (1945).  Once a plaintiff satisfies these two requirements a presumption arises that jurisdiction is reasonable, and the burden of proof and persuasion shifts to the defendant opposing jurisdiction to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp. v. Rudzewicz, 105 S.Ct. 2174, 2185 (1985).

For claims arising under state law, federal courts "may assert [personal] jurisdiction if: (1) the state's long-arm statute applies, as interpreted by the state's courts; and (2) if due process is satisfied under the [F]ourteenth [A]mendment to the United States Constitution." Johnston v. Multidata Systems International Corp., 523 F.3d 602, 609 (5th Cir. 2008).  The Texas long-arm statute authorizes suit against nonresidents "[i]n an action arising from the nonresident's business in this state." Tex. Civ. Prac. & Rem. Code § 17.043.  The Texas Supreme Court has stated that the long-arm statute's "broad doing-business language allows the statute to 'reach as far as the federal constitutional requirements of due process will allow.'"  See Moki Mac River Expeditions v. Drugg, 221 S.W.3d 569, 575 (Tex. 2007) (quoting Guardian Royal Exchange Assurance, Ltd. v. English China Clays,

P.L.C., 815 S.W.2d 223, 226 (Tex. 1991)).  See also Schlobohm v.
Schapiro, 784 S.W.2d 355, 357 (Tex. 1990) (recognizing that the
limits of the Texas long-arm statute are coextensive with the
limits of constitutional due process guarantees).

    2.   <u>Application of the Law to the Facts</u>

Defendant argues that the claims asserted against it should
all be dismissed pursuant to Rule 12(b)(2) for lack of personal
jurisdiction because it "does not have any contacts with the State
of Texas."[1]  Plaintiff responds that the "LCS has and continues to
have multiple, sufficient contacts with Texas"[2] to support the
exercise of personal jurisdiction.

    (a)  Minimum Contacts Analysis

"There are two types of 'minimum contacts':  those that give
rise to specific personal jurisdiction and those that give rise to
general personal jurisdiction." <u>Lewis v. Fresne</u>, 252 F.3d 352, 358
(5th Cir. 2001).   Plaintiff's allegations are based on the
assertion of both specific and general jurisdiction.

---

[1]Defendant's Rule 12(b)(2) Motion to Dismiss for Lack of
Personal Jurisdiction and, in the Alternative, Motion to Dismiss
for Improper Venue and Motion to Transfer (Defendant's Motion),
Docket Entry No. 4, p. 4.

[2]Plaintiff's Response to Defendant's 12(b)(2) Motion to
Dismiss for Lack of Personal Jurisdiction, and in the Alternative,
Motion to Dismiss for Improper Venue and Motion to Transfer Venue
(Plaintiff's Response), Docket Entry No. 6, p. 4.

-4-

## (1)  Specific Jurisdiction

Specific jurisdiction exists where a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  Burger King, 105 S.Ct. at 2183.   To determine specific personal jurisdiction in a breach of contract case, the court must ask whether the nonresident's forum contacts were instrumental in the formation of the contract or its breach.  Id. at 2185.  See also Religious Technology Center v. Liebreich, 339 F.3d 369, 375 (5th Cir. 2003), cert. denied, 124 S.Ct. 1085 (2004) ("In the specific jurisdiction rubric, only those acts which relate to the formation of the contract and the subsequent breach are relevant.").  The Fifth Circuit has explained that

> [a]lthough a single act by the defendant directed at the forum state can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted, entering into a contract with an out-of-state party, without more, is not sufficient to establish minimum contacts.  Rather, in a breach of contract case, to determine whether a party purposefully availed itself of a forum, a court must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing."

Latshaw v. Johnston, 167 F.3d 208, 211 (5th Cir. 1999) (quoting Burger King, 105 S.Ct. at 2185).  "The place of performance is a 'weighty consideration,' even though it is not 'automatically determinative' of personal jurisdiction."  Lansing Trade Group, LLC v. 3B Biofuels GmbH & Co., KG, 612 F.Supp.2d 813, 822 (S.D. Tex. 2009) (citing Electrosource, Inc. v. Horizon Battery Technologies,

<u>Ltd.</u>, 176 F.3d 867, 874 (5th Cir. 1999)).  Defendant disputes the existence of the contract that plaintiff alleges was breached, but acknowledges that "[t]he one and only contact that [it] ever had with the State of Texas was to utilize payroll services offered by WGMA, a Texas company."[3]  Plaintiff has presented evidence that "[t]he payroll and labor services rendered to [defendant] are performed at WGMA's office at Portway Plaza 1717 East Loop, Suite 200, Houston, Texas 77029."[4]  Nathan Wesely, plaintiff's Vice-President, Treasurer, and General Counsel declares that

> 4.   WGMA provides payroll service so that all longshore workers receive one paycheck and one set of benefit plans.
>
> 5.   Since its inception in 1968, WGMA has provided labor and payroll services to LCS, its predecessors, and competitors in Lake Charles, Louisiana.  Ports America Lake Charles was a stevedoring company operating in Lake Charles, Louisiana.  LCS purchased Ports America Lake Charles in early 2008.  Upon purchase of Ports America Lake Charles, the labor and payroll services previously provided to Ports America Lake Charles were seamlessly provided to LCS without interruption.  The invoices previously paid by Ports America Lake Charles continued to be paid by LCS without interruption.  The labor and payroll services and fees agreed to by all users of WGMA services, including Ports America Lake Charles, were assumed without interruption by LCS.
>
> 6.   The payroll and labor services rendered to LCS are performed at WGMA's office at 1717 East Loop, Suite 200, Houston, Texas 77029.
>
>> a.   Since purchasing Ports America Lake Charles, LCS sends its weekly payroll records and

---

[3]Defendant's Motion, Docket Entry No. 4, p. 6.

[4]Plaintiff's Response, Docket Entry No. 6, p. 4.

entries, including any corrections, deletions, additions and time sheets for overtime to WGMA's Houston office.

b.    WGMA receives and processes LCS's payroll entries in Houston, Texas on a weekly basis.

c.    After payroll is processed, WGMA prints and sends the paychecks [for LCS's employees] from Houston to LCS on a weekly basis.

7.    At its Houston office, WGMA also provides various services to LCS. For example, WGMA processes unemployment claims filed by employees of LCS, [and] works with LCS employees to correct I-9 deficiencies of new workers.

8.    Each month, LCS pays WGMA for services by sending checks and/or wire payments to WGMA's office in Houston, Texas. Each week LCS funds payroll by way of a wire to WGMA's payroll account. The person WGMA corresponds with with respect to the wire transfers and checks is Peter Godfrey. When there was an overpayment, WGMA sent the funds to LCS to a Texas Bank account specified by Peter Godfrey. . .

9.    Tom Flanagan is the president of LCS. . .

10.    Both Tom Flanagan and Peter Godfrey have their offices at 595 Orleans St., Ste. 1500, Beaumont, Texas 77701.

11.    I had a series of meetings with Tom Flanagan regarding LCS labor fees and services rendered by the WGMA. Two of these meetings were at the offices of LCS' attorney, Hunter Lundy, in Lake Charles. One of these meetings, on June 25, 2009, was in Tom Flanagan's office in Beaumont, Texas.

12.    In April, 2009, LCS negotiated a collective bargaining agreement with the ILA. Tom Flanagan met with the ILA officials in the ILA district offices, located in Houston, Texas, to negotiate the collective bargaining agreement. The collective bargaining agreement covers . . . three affiliated companies: LCS, James J. Flanagan Shipping Corp. and P.C. Pfeifer Co. Inc. During

-7-

their negotiations, LCS requested the current WGMA collective bargaining agreement. The WGMA collective bargaining agreement was provided to Jim Flanagan, Tom Flanagan's brother, in WGMA's offices in Houston.

13. . . . Exhibit C is the collective bargaining agreement entered into by LCS, James J. Flanagan Shipping Corp. and P.C. Pfeifer Co. Inc. That collective bargaining agreement incorporates by reference WGMA's collective bargaining agreement. Exhibit D is WGMA's collective bargaining agreement that was provided to Jim Flanagan.[5]

Although defendant has submitted an affidavit in which its president, Tom Flanagan, states that "LCS, LLC while under his ownership, has never entered into a written contract with . . . WGMA for services to be performed by WGMA,"[6] and that "all services WGMA alleges on its original petition can only be provided to LCS in Lake Charles, Louisiana,"[7] defendant has not submitted any evidence capable of refuting plaintiff's evidence that plaintiff has rendered payroll services to defendant and/or its predecessor since 1968, that those services have been performed at WGMA's office in Houston, Texas, and that defendant has always supplied the data, the funds, and the payments for the performance of those services to plaintiff in Houston, Texas. Nor has defendant submitted any evidence capable of refuting plaintiff's evidence

---

[5]Declaration of Nathan Wesely, Exhibit A attached to Plaintiff's Response, Docket Entry No. 6.

[6]Affidavit of Tom Flanagan, Exhibit A attached to Defendant's Motion, Docket Entry No. 4, ¶ 16.

[7]Id. ¶ 27.

that it processes unemployment claims filed by defendant's employees and works with defendant's employees to correct I-9 deficiencies at its Houston office; that on June 25, 2009, its Vice-President, Treasurer, and General Counsel, Nathan Wesely, met with defendant's president, Tom Flanagan, at Tom Flanagan's office in Beaumont, Texas, regarding the services rendered by plaintiff to defendant; that in April of 2009 Tom Flanagan met with ILA officials in the ILA district offices in Houston, Texas, to negotiate a collective bargaining agreement; that during the course of those negotiations defendant requested the current WGMA collective bargaining agreement; that the WGMA collective bargaining agreement was provided to Jim Flanagan at WGMA's offices in Houston, Texas; or that WGMA's collective bargaining agreement was incorporated by reference into the collective bargaining agreement that defendant entered with the ILA.

The court concludes that plaintiff has satisfied its burden of producing prima facie evidence that defendant has sufficient contacts with the State of Texas to support the exercise of specific personal jurisdiction for claims arising from the alleged breach of contract to pay plaintiff for the payroll services that defendant does not dispute it utilized, and that the plaintiff performed in Houston, Texas. This conclusion is supported by Wesely's declaration that defendant and its predecessor had an ongoing business relationship of long standing with the plaintiff, a Texas resident, and that as such, the nonresident defendant's

-9-

contacts with the forum state were not fortuitous.  <u>See</u> <u>Latshaw</u>, 167 F.3d at 213 & n.19 (citing <u>Polythane Systems, Inc. v. Marina Ventures International, Ltd.</u>, 993 F.2d 1201, 1206 (5th Cir. 1993), <u>cert. denied</u>, 114 S.Ct. 1064 (1994) ("The parties had an ongoing business relationship, and the [nonresident defendant's] contacts with the forum state were not fortuitous.")).

### (2)  General Jurisdiction

General jurisdiction exists when the cause of action does not arise from or relate to the nonresident defendant's purposeful conduct within the forum state, and the nonresident defendant has engaged in "continuous and systematic general business contacts with the forum state." <u>Stroman Realty, Inc. v. Antt</u>, 528 F.3d 382, 385 (5th Cir. 2008).  <u>See also</u> <u>Wilson v. Belin</u>, 20 F.3d 644, 647 (5th Cir.), <u>cert. denied</u>, 115 S.Ct. 322 (1994) (general jurisdiction exists when a defendant's contacts unrelated to the cause of action are both "continuous and systematic" and "substantial").  The plaintiff must demonstrate contacts of a more extensive quality and nature between the forum state and the defendant than those needed to support specific jurisdiction. <u>Johnston</u>, 523 F.3d at 609.  To exercise general jurisdiction, the court must determine whether the defendant has "substantial, continuous, and systematic contacts" with the forum state.  <u>Central Freight Lines, Inc. v. APA Transp. Corp.</u>, 322 F.3d 376, 381 (5th Cir. 2003).

Plaintiff argues that general jurisdiction exists over the defendant because "[t]he very owner of LCS, Tom Flanagan, actually maintains an office in Texas. . . Mr. Flanagan is not only owner of LCS, but is also an officer of two other entities doing business in Texas: James J. Flanagan Shipping Corp. and P.C. Pfeiffer Co. Inc."[8] While this evidence would be relevant to a determination of whether the court exercises general jurisdiction over Tom Flanagan, it is not relevant to whether the court may exercise general jurisdiction over the defendant, LCS, LLC. Accordingly, the court concludes that the plaintiff has failed to make a prima facie showing that the defendant, LCS, LLC, has engaged in "continuous and systematic general business contacts with the forum state." Stroman Realty, 528 F.3d at 385.

(b)  Notions of Fair Play and Substantial Justice

Under the second prong of the due process inquiry the court must evaluate whether the exercise of jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." International Shoe Co., 66 S.Ct. at 158. See also Asahi Metal Indus. Co. v. Superior Court, 107 S.Ct. 1026, 1028 (1987). In Command-Aire Corp. v. Ontario Mechanical Sales and Service Inc., 963 F.2d 90, 95 (5th Cir. 1992), the Fifth Circuit noted that "[t]his assessment requires examination of the burden on

---

[8]Plaintiff's Response, Docket Entry No. 6, p. 8 (citing the Declaration of Nathan Wesely, Exhibit A attached thereto, at ¶¶ 9-10).

the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the shared interest of the several states in furthering fundamental social policies."

Although Texas may be less convenient for the defendant than a Louisiana forum, the prosecution of the action in Texas would not be unreasonable or unfair.  Not only does plaintiff have an interest in receiving payment for the services that it performed in Texas, but Texas has a legitimate interest in providing an effective means of redress for defendant's alleged failure to pay the plaintiff for the services performed on its behalf and at its request.  See Command-Aire Corp., 963 F.2d at 95 (citing McGee v. International Life Ins. Co., 78 S.Ct. 199 (1957)).  The defendant has failed to argue, much less to persuade the court, that other interests either outweigh Texas's interest in protecting its residents from breach of contract to pay for services rendered in Texas, or that proceedings in Texas would be offensive to traditional notions of fair play or substantial justice. Accordingly, the court concludes that no due process violation will be occasioned by proceedings in Texas.

   3.  Conclusions

   For the reasons explained above, the court concludes that plaintiff has made a prima facie showing that the defendant's contacts with the state of Texas are sufficient to support the exercise of specific but not general jurisdiction over the

-12-

defendant, and that the exercise of specific jurisdiction over the defendant will not offend traditional notions of fair play and substantial justice.   Accordingly, defendant's motion to dismiss this action for lack of personal jurisdiction will be denied.

## II.  Motion to Dismiss for Improper Venue

Citing Premier Network Services, Inc. v. Public Utility Commission, 2005 WL 1421404, *5 (N.D. Tex. 2005) (unpublished), defendant argues that to

> establish venue in this Court, plaintiff ignores the Defendant's alleged actions and instead relies upon the purported effects of the asserted failure of the defendant to perform as per supposed agreement with plaintiff.  Further, "the fact that a plaintiff residing in a given judicial district *feels the effect* of a defendant's conduct in that district does not mean that the events or omission occurred in that district for purposes of establishing venue."[9]

Federal Rule of Civil Procedure 12(b)(3) allows a case to be dismissed for improper venue.   When a defendant questions the plaintiff's choice of venue, the burden shifts to the plaintiff to identify facts establishing that venue is appropriate in the district in which the action is pending.  See Laserdynamics Inc. v. Acer America Corp., 209 F.R.D. 388, 390 (S.D. Tex. 2002) (Hoyt, J.).[10]  Absent an evidentiary hearing, courts will allow a plaintiff

_____

[9]Defendant's Motion, Docket Entry No. 4, p. 7.

[10]The court recognizes that the federal district courts in the Fifth Circuit have been inconsistent on the question of which party bears the burden of proof on a Rule 12(b)(3) motion for improper
(continued...)

-13-

to carry the burden by establishing facts, taken as true, that establish venue. Id. The court will accept uncontroverted facts contained in the plaintiff's pleadings as true, and will resolve any conflicts in the parties' documents and affidavits in the plaintiff's favor. Id.

Under the general venue statute, venue is proper only in (1) a district where the defendant resides, (2) a district in which a substantial part of the events or omissions giving rise to the claim occurred, or (3) a district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no other district in which the action may otherwise be brought. 28 U.S.C. § 1391(a). If venue is improper, a district court has broad discretion in determining whether to dismiss or transfer a case in the interest of justice. See Caldwell v. Palmetto State Savings Bank of South Carolina, 811 F.2d 916, 919 (5th Cir. 1987) (per curiam).

Plaintiff's Complaint alleges that "[v]enue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391(a)2)

---

[10](...continued)
venue. Compare Premiere Network Services, Inc., 2005 WL 1421404, *5 (stating that "the movant 'bears the burden of demonstrating that the plaintiff filed the lawsuit in an improper venue'"), with Ashton v. Knight Transport, Inc., 2009 WL 2407829, *1 & n.3 (stating that "[w]hen a defendant questions the plaintiff's choice of venue, the burden shifts to the plaintiff to identify facts establishing that venue is appropriate in the district in which the action is pending"). However, neither party has raised this issue, and the court does not need to resolve the issue to decide this motion because the plaintiff has presented facts showing that venue is proper in this district.

because a substantial part of the events or omissions giving rise

to WGMA's claim occurred in this district."[11]  Plaintiff argues that

> [v]enue is proper in the Southern District of Texas
> pursuant to 28 U.S.C. § 1391(a)(2) because . . . WGMA's
> claim is to recover unpaid fees for services provided in
> Houston, Texas, at their office.  The events and
> omissions giving rise to WGMA's claim, events including
> payroll services and labor services, along with LCS's
> failure to pay for those services, occurred in Houston,
> Texas.[12]

The elements of a breach of contract claim under Texas law are

(1) the existence of a valid contract, (2) performance or tendered

performance by the plaintiff, (3) breach of the contract by the

defendant, and (4) damages to the plaintiff resulting from the

breach.  See KW Construction v. Stephens & Sons Concrete

Contractors, Inc., 165 S.W.3d 874, 882 (Tex. App. -- Texarkana

2005, pet. denied).  The evidence submitted by plaintiff shows that

it had an ongoing business relationship of long standing with the

defendant and/or the defendant's predecessor that called for

plaintiff to perform payroll and other services for the defendant

at its offices in Houston, Texas, and also called for the defendant

to make payment for those services in Houston, Texas, and that the

claims asserted in this action arise from the defendant's alleged

failure to make those payments.  This evidence constitutes a prima

facie showing that a substantial part of the events or omissions

---

[11]Plaintiff West Gulf Maritime Association's Original
Complaint, Docket Entry No. 1, p. 1 ¶ 4.

[12]Plaintiff's Response, Docket Entry No. 6, p. 11.

giving rise to this action occurred in the Southern District of Texas.  In terms of the venue provision and plaintiff's claim for breach of contract, the evidence connects at least two elements -- the performance of an alleged contract by plaintiff and the defendant's alleged breach -- to the Southern District of Texas. See id. at 881-83 (citing Krchnak v. Fulton, 759 S.W.2d 524, 526 (Tex. App. -- Amarillo 1988, rev. denied) (recognizing that a part of a cause of action for breach of contract accrues in the place in which payment was to be made); and National Family Care Life Ins. Co. v. Fletcher, 57 S.W.3d 662, 665 (Tex. App. -- Beaumont 2001, pet. denied) (recognizing that place of payment is a relevant consideration in reviewing venue issues involving suits for breaches of contract)).  The court therefore concludes that events or omissions pertaining to these two elements of the defendant's breach of contract claim are sufficient to qualify as a substantial part of the plaintiff's claim and constitute prima facie evidence supporting venue in this district under 28 U.S.C. § 1391(a)(2).

### III.  Alternative Motion to Transfer Venue

"[I]n the event that the Court should find that there are sufficient contacts with the forum state to retain jurisdiction over LCS, LLC, LCS, LLC respectfully requests that the Court transfer the instant cause to the United States District Court, Western District of Louisiana, Lake Charles Division."[13]   Citing

---

[13]Defendant's Motion, Docket Entry No. 4, p. 7.

<u>Spiegelberg v. Collegiate Licensing Co.</u>, 401 F.Supp.2d 786 (S.D. Tex. 2005), defendant argues that "the Court must consider the convenience of the parties and witnesses which is an important factor under [28 U.S.C.] § 1404(a)."[14]   In support of its motion to transfer venue, defendant argues that it

> maintains offices in Lake Charles, Louisiana.  The cost of obtaining the attendance of witnesses and other trial expenses would also be less in Calcasieu Parish as it is the site of the purported performed services at issue. There would be no delay or prejudice in transferring this cause to the Western District of Louisiana, Lake Charles Division.[15]

## A.   Standard of Review

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  <u>See also</u> <u>In re Volkswagen AG</u>, 371 F.3d 201, 203 (5th Cir. 2004), and <u>In re Horseshoe Entertainment</u>, 337 F.3d 429, 433 (5th Cir.), <u>cert. denied</u>, 124 S.Ct. 826 (2003).  The purpose of § 1404(a) "is to prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses, and the public against unnecessary inconvenience and expense . . .'" <u>Van Dusen v. Barrack</u>, 84 S.Ct. 805, 809 (1964) (quoting <u>Continental Grain Co. v. The Barge FBL-585</u>, 80 S.Ct. 1470, 1474, 1475 (1960)).  The movant bears the burden of

---

[14]<u>Id.</u>

[15]<u>Id.</u> at 8.

demonstrating that change of venue under § 1404(a) is warranted by showing that the balance of convenience and justice weighs heavily in favor of a transfer of venue.  See Time, Inc. v. Manning, 366 F.2d 690, 698 (5th Cir. 1966) ("plaintiff's privilege of choosing venue places the burden on the defendant to demonstrate why the forum should be changed").  The decision to transfer a case is committed to the district court's sound discretion.  See In re Volkswagen, 371 F.3d at 203.

**B.   Analysis**

The balance of inconvenience in this case is essentially a draw.  Whether the dispute is litigated in Texas or Louisiana, one side will need to travel.  Non-party witnesses would need to travel to either Houston or Lake Charles for a trial.  To break the apparent tie, defendant contends that the court should defer to Louisiana because that is the site of the purportedly performed services at issue.  For the reasons explained above in § I.B.2(a)(1), the court has already concluded that the claims alleged in the plaintiff's complaint are based on defendant's failure to pay for payroll and other services that were performed at the plaintiff's office in Houston, Texas, and that due to the parties' ongoing, long standing business relationship both parties contemplated that the services performed for the defendant would be performed in Texas and paid for in Texas.  Because the site of the services at issue is Texas and not Louisiana, the court is not

persuaded that convenience of the parties and the witnesses favors transfer to Louisiana.  Accordingly, defendant's motion to transfer venue will be denied.

### IV. <u>Conclusions and Order</u>

For the reasons explained above, Defendant's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction and, in the Alternative, Motion to Dismiss for Improper Venue and Motion to Transfer Venue (Docket Entry No. 4) is **DENIED.**

**SIGNED** at Houston, Texas, on this 15th day of January, 2010.

SIM LAKE
UNITED STATES DISTRICT JUDGE

-19-